MIGLETZ ET AL. v. THE NEW YORK LIFE INS. CO.

*Insurance—Rescission of contract for fraudulent material statements in application—Burden of proof on insurer— Section 9391, General Code—Statements willfully false and fraudulently made, without insurer's knowledge of falsity.*

Suit was begun by an insurance company to rescind a contract of insurance on the ground that it was induced to enter into the same by fraudulent statements made by the insured in the application for such insurance.

*Held*: Section 9391, General Code, applies, and the burden was on the insurance company to clearly prove that some of the material statements made by the insured in his application were willfully false and fraudulently made, and that said company or its agent had no knowledge of the falsity thereof.

(Decided December 15, 1926.)

ERROR: Court of Appeals for Mahoning county.

*Messrs. Friedman & Rummell,* for plaintiffs in error.

*Mr. D. F. Kennedy,* for defendant in error.

WASHBURN, J. The New York Life Insurance Company, as plaintiff, brought suit in the common pleas court against Mike Migletz, a minor, to rescind a contract of insurance which had theretofore been entered into between said parties. Anna Migletz, the mother of Mike Migletz, was made a party defendant; she being the beneficiary under the policy.

As a ground for the relief asked, the insurance company set forth in its petition that Mike Mig-

letz, in his original application for insurance, made certain statements pertaining to his health which were material to the risk and were absolutely false and willfully and fraudulently made for the purpose of inducing the company to issue its policy, and that the company, in reliance thereon, issued the policy; that it had no knowledge and no reason to believe that said statements were untrue; and that it would not have issued the policy, had the true situation been disclosed to it.

It appears that the policy lapsed for nonpayment of the premium and that it was reinstated upon the application of Migletz, and the company claimed that a like fraud was practiced upon it in Migletz's application for reinstatement of the policy.

These claims were, of course, denied by Migletz.

The cause came on for trial, and the court decided to grant the request of Migletz and submit the case to a jury. The jury was impaneled and the case tried—with the result that under the charge of the court the jury returned a general verdict in favor of the company.

The controversy is before this court on a petition in error, the principal claims being that the trial court erred in its charge to the jury; that the verdict is manifestly against the weight of the evidence; and that the judgment is contrary to law.

It appears that the agent of the company who solicited Migletz to take out the policy had been acquainted with Migletz and his family for a number of years, and that previous to the issue of the policy in question he had induced Migletz's father, and other members of the family, to insure in the company, and that a year before the issuance of the policy in question in this suit, when a policy

was issued to Migletz's father, the plaintiff in error was asked to take out a policy, but declined to do so at that time; that before the policy in question was issued a physician, who was not selected by and was not the agent of Migletz, examined him and entered upon the application the answers of Migletz to certain questions, which the insurance company claims were false, and which constituted the basis of the claim of the insurance company for the relief asked for in this action.

There is no dispute of the fact that the answers were made, or that they were material, or that the company relied upon them, or that the policy would not have been issued had they not been made, and the controlling issues of fact are whether the answers were false, and, if so, whether they were willfully false and fraudulently made.

The insurance company recognized the fact that, in order that it might be entitled to the relief sought, said answers had to be willfully false and fraudulently made, and hence it alleged in its petition that the answers were "absolutely false, willfully and fraudulently made, made for the purpose of inducing the company to issue the policy."

Our statute (Section 9391, General Code) provides that an answer to an interrogatory, made by an applicant in his application for a policy of insurance, shall not bar his right to recover upon the policy "unless it be clearly proved that such answer is willfully false, was fraudulently made, * * * and also that the agent or company had no knowledge of the falsity or fraud of such answer."

This provision of the statute was clearly ap-

plicable to the suit brought to cancel the policy in question, and applied equally to the information furnished by the insured in his original application and in his application for the reinstatement of the policy. So that in this case, if the court desired the assistance of a jury in determining those questions of fact, it should have charged the jury that the burden was upon the insurance company to *clearly* prove that the answers complained of were willfully false and fraudulently made, and that the agent of the company had no knowledge of their falsity. Instead of so charging, the court, after reading from the statute, said to the jury:

"Now, the burden of proof in this case is upon the plaintiff, and it must establish the issues here in its favor by a preponderance of the evidence. * * * After all, the preponderance of the evidence is simply the greater probability; it really resolves itself into a situation of what is more probable on one side or the other."

And in another place in the charge, the trial judge said to the jury that the insurance company should prevail if the jury "should find by a preponderance of the evidence that the statements in that application for renewal were false and were made for the purpose of defrauding the insurance company, and that they were material, acted upon, of course, by the insurance company, and actually did or would defraud the company in the event that this party attempted to recover on his policy in the future."

This, of course, was clearly error, for by the statute the burden was placed upon the insurance company, not simply to prove said issue by a preponderance of the evidence, but it was required

to *clearly* prove its claim and that the answers in question were false and were made with a knowledge of their falsity. In other parts of the charge this fundamental error was emphasized and its prejudicial character made certain. The trial judge admonished the jury to pay particular attention to what he said and to be sure and follow the instructions he gave them, saying to them:

"What we may say may be wrong, but if we make a mistake there is a remedy that the aggrieved party may have in the reviewing courts, and the jury are to take the law as the court gives it to you, whether you believe it is the law or not, or whether you think it is good law or not."

And then the court charged as follows: "It is, of course, well known to the jury, to every thinking person, that before an institution like an insurance company could continue to do business they have to have certain rules, and one of them is, of course, that the applicant for insurance answer certain questions and that he shall answer them truthfully. If everybody could go in to an insurance company, persons that have diseases or have reason to believe that their lives are going to be very short could secure insurance, and the company required to pay the policies later on, they couldn't do business at all, but a short while, so that in order to protect an institution that is recognized as a part of our civilization it is necessary for us to take seriously what the court is trying to show to you in the discussion or consideration of this application."

And further: "Now, when you go out to deliberate upon this case you are not simply deciding a

lawsuit between these parties, you are establishing a precedent that should be followed in your community here and other places in the future, that is why verdicts are of very great value. The right kind of verdicts are as a rule, and, of course, it affects these parties now, but the general effect in the future will be of course greater than it would be to these particular litigants in this case, so when you retire for deliberation keep in mind just what you said when you took your oath that you would render a true verdict in accordance with the law and evidence.''

It is apparent from the charge of the court taken as a whole, and from remarks made by the trial judge during the trial, as contained in the record, that the trial judge considered that the facts in the case warranted the relief which the insurance company sought and which the court finally granted. It thus appears that the trial judge approved of the finding of the jury and adopted it as his own.

It must be remembered that this is not a case in which the parties were entitled to a jury trial; that a jury was impaneled for the purpose of assisting the trial judge in the determination of an issue of fact in an equity case; and that, therefore, notwithstanding the errors made by the trial judge in the charge to the jury, the question remains as to whether or not the trial judge was justified in adopting the findings of the jury as his findings in disposing of the case. This involves a consideration of the evidence.

In view of the errors in the charge of the court, the finding of the jury on the facts is not only not conclusive, but is of little value.

The application for this insurance was made on the 2d day of June, 1923, and the policy was issued soon thereafter. In the latter part of that year the policy lapsed, and some time during December an application was made for its reinstatement, and that reinstatement was approved by the company on the 19th day of January, 1924. In April, 1925, Migletz applied for disability benefits under the policy, and the insurance company was led to bring this action because of statements made by the attending physician in that application for disability benefits. It seems that at that time he was suffering from what is known as disseminated sclerosis, and the statement set forth that he had been so disabled all his life, and the claim is made that, therefore, the statements made in his application for the policy and in his reinstatement of it were untrue.

The evidence to support the proposition that Migletz was ill at and before these applications were made consists only of the statements made by the doctor—to the effect that his examination of him in 1925, and his history of the case obtained at that time from the minor or his parents, led him to believe that the boy's condition of disability had existed from birth.

It is apparent from the examination of the doctor that he had no independent recollection, and relied entirely upon notes that were made at the hospital at the time of the examination. The party who made those notes was not produced. An employe of the hospital who copied the notes into a book, but who was not present when they were made, was produced, and the doctor refreshed his recollection from those notes, without having any clear

and definite remembrance of where the information was obtained from which the notes were made.

There was also some testimony by a man for whom the minor had worked, as to his being peculiar in his speech and walk, and getting provoked when fellow employes played jokes on him. The testimony shows that Migletz attended school and passed· through the seventh grade; that he worked quite regularly; that for a period of over two years, when this policy· was issued and renewed, he was working for the same company and worked practically all the time; and that his disability did not become noticeable until about the time he made application for benefits under the policy. The condition of the boy at the time of the trial was not very good, but he testified that he was not sick or disabled and did not know that there was anything the matter with him before or at the times the policy was issued and renewed. The agent of the company·knew him and the family for a long time, and what his employer testified to in reference to the appearance of the boy was apparent to the agent, as well as to the employer, and the agent did not testify in the case. The mother testified that the boy was normal so far as health was concerned, and that his disability did not appear until after the policy was issued and renewed, and not until shortly before the application was made for benefit thereunder.

We have not attempted to state or detail all of the evidence bearing upon this question, but we are unanimously of the opinion that a finding that Migletz knew at the time the statements were made that they were false; that he made them for the purpose of deceiving the insurance company; and

that the agent of the insurance company had no knowledge of their falsity, is manifestly against the weight of the evidence; and it seems apparent that the trial court approved of such finding only because he was of the opinion that such facts were required to be proven merely by a preponderance of the evidence. In any event the insurance company did not clearly prove that the answers made by the minor in his applications were willfully false and fraudulently made.

The judgment in this case is contrary to law and is reversed, and the cause is remanded.

*Judgment reversed and cause remanded.*

Pardee, P. J., and Funk, J., concur.

Judges of the Ninth Appellate District sitting in place of Judges Roberts, Farr and Pollock, of the Seventh Appellate District.